**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
DEL RIO DIVISION**

| | | |
|---|---|---|
| **BRYAN JONES,** | § | |
| **Plaintiff,** | § | |
| | § | |
| | § | **Civil Action No.** |
| **v.** | § | **2:24-CV-00114-EG-JAC** |
| | § | |
| | § | |
| **UNITED STATES OF AMERICA,** | § | |
| **Defendant.** | § | |
| | § | |

**<u>REPORT AND RECOMMENDATION</u>**

To the Honorable Ernest Gonzalez, United States District Judge:

This case was referred to the undersigned for all pretrial matters pursuant to 28 U.S.C. § 636.  Now pending before the Court is Defendant United States of America's Motion to Dismiss Plaintiff's First Amended Complaint ("Motion") brought under Federal Rule of Civil Procedure 12(b)(1).  Dkt. No. 9.  In accordance with § 636, the undersigned hereby issues this Report and Recommendation, recommending that the Motion be **GRANTED IN PART.**

**I. BACKGROUND**

On December 26, 2024, Plaintiff Bryan Jones sued the United States pursuant to the Federal Tort Claims Act (FTCA).  Dkt. No. 1.  Later, he filed Plaintiff's First Amended Complaint ("Complaint").  Dkt. No. 8.  In this Complaint, Plaintiff alleges that on January 21, 2023, he and his father spent the day boating on Lake Amistad.  *Id.* at 3.  The United States National Park Service (NPS) operates the Amistad Recreation Area, which includes Lake Amistad.  *Id.* at 2-3.  As they approached the dock at Diablo East Boat Ramp to exit the lake, Plaintiff reached out and grabbed the metal dock cleat to pull the boat toward the dock.  *Id.* at 3.  He then felt a sharp pinch

in his right middle finger.  *Id.*[1]  Plaintiff looked down and saw that he had severed the tip of his middle finger, which fell into the lake, never to be found.  *Id.*  He rushed to Val Verde Regional Medical Center for emergency treatment and eventually underwent surgery in San Antonio, Texas.  *Id.* at 4.

Plaintiff filed an administrative claim with the United States Department of the Interior.  *Id.* at 2.  After his claim was denied, Plaintiff timely filed the present suit under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346, 2671-80, seeking damages against the United States.  According to Plaintiff, the United States negligently trained and supervised its NPS employees in maintaining the dock.  Plaintiff further alleges that the United States is vicariously liable for the acts of its employees, who acted with negligence, gross negligence, and negligence per se in maintaining the dock.

On May 5, 2025, Defendant filed the present Motion, seeking dismissal under Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction.  Dkt. No. 9.  Defendant contends that this Court lacks jurisdiction over Plaintiff's claims because the discretionary function exception to the FTCA's waiver of the United States's sovereign immunity bars Plaintiff's claims.  *Id.* at 1.  Alternatively, Defendant asserts that under the Texas Recreational Use Statute, Tex. Civ. Prac. & Rem. Code §§ 75.002, it can only be liable for grossly negligent conduct, which Plaintiff fails to plausibly allege.  *Id.* at 2, 16–21.

---

[1] It is unclear precisely how the cleat failed leading to Plaintiff's injury.  The Complaint merely states that while using minimal force to pull his boat towards the dock, Plaintiff suddenly felt a sharp pinch.  Dkt. No. 8 at 3.  Defendant notes in the Motion that Plaintiff alleged in his administrative claim that the dock cleat broke but failed to include that detail in the Complaint.  Dkt. No. 9 at 3.

## II.  DISCUSSION

### A.  The FTCA

The FTCA "effects a limited waiver of sovereign immunity, affording federal court jurisdiction where the United States shall be liable in tort 'in the same manner and to the same extent as a private individual under like circumstances.'"  *Ecker v. United States*, 358 F. App'x 551, 553 (5th Cir. 2009) (quoting 28 U.S.C. § 2674); *see also* 28 U.S.C. § 1346.  It is the exclusive remedy for tort actions against the United States.  28 U.S.C. § 2679.  For an FTCA claim to be actionable, a claim must be: "[1] against the United States, [2] for money damages, . . . [3] for injury or loss of property, or personal injury or death [4] caused by the negligent or wrongful act or omission of any employee of the Government [5] while acting within the scope of his office or employment, [6] under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred."  *Brownback v. King,* 592 U.S. 209, 212 (2021) (quoting *FDIC v. Meyer*, 510 U.S. 471, 477 (1994)).  Because the incident took place in Texas, the laws of Texas would apply.

The FTCA is unique in that "all elements of a meritorious claim are also jurisdictional."  *Brownback*, 592 U.S. at 217 (citing *Meyer*, 510 U.S. at 477).  Longstanding Fifth Circuit precedent dictates that "when the issue of jurisdiction is intertwined with the merits, district courts should 'deal with the objection as a direct attack on the merits of the plaintiff's case under either Rule 12(b)(6) or Rule 56.'"  *M.D.C.G. v. United States*, 956 F.3d 762, 768-69 (5th Cir. 2020) (quoting *Montez v. Dep't of Navy,* 392 F.3d 147, 150 (5th Cir. 2004)).  However, in *Brownback*, the Supreme Court stated that "where a plaintiff fails to plausibly allege an element that is both a merit element of a claim and a jurisdictional element, the district court may dismiss the claim under Rule 12(b)(1) or Rule 12(b)(6). Or both."  *Brownback*, 592 U.S. at 218 n.8.

Some courts have interpreted *Brownback* as rendering motions to dismiss pursuant to Rule 12(b)(1) and Rule 12(b)(6) functionally interchangeable with respect to FTCA claims. *See, e.g., C.M. v. United States,* 672 F. Supp. 3d 288, 319 (W.D. Tex. 2023) ("[I]n those rare circumstances when merits and jurisdictional elements merge or overlap, such as in FTCA cases, courts may address them together under either Rule 12(b)(1) or 12(b)(6) or both").  Nonetheless, more than a year after *Brownback*, the Fifth Circuit reaffirmed that "[r]esolution of the jurisdictional issue on a 12(b)(1) motion is improper where the jurisdictional attack is intertwined with the merits of a claim." *Pickett v. Tex. Tech Univ. Health Scis. Ctr.*, 37 F.4th 1013, 1030 (5th Cir. 2022) (citation modified) (quoting *Montez,* 392 F.3d at 150); *see also M.D.C.G.*, 956 F.3d at 768–69.  In other words, the Fifth Circuit maintains that Rule 12(b)(6) or Rule 56 governs dismissals where the jurisdictional attack is intertwined with the merits of a claim.

### B.  The Discretionary Function Exception

Certain classes of tort claims are excepted from the FTCA's broad waiver of immunity. *United States v. S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines)*, 467 U.S. 797, 808 (1984); *accord* 28 U.S.C. § 2680.  The United States relies on the discretionary function exception, which preserves the federal government's sovereign immunity for claims "based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused."  28 U.S.C. § 2680(a); Dkt. No. 9 at 7.  Congress designed the discretionary function to "prevent judicial 'second-guessing' of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort." *Varig Airlines*, 467 U.S. at 814.

In assessing whether the discretionary function exception applies, the Court must first define the challenged conduct. *Gonzalez v. United States*, 851 F.3d 538, 545 (5th Cir. 2017) (citing

*Autery v. United States*, 992 F.2d 1523, 1527 (11th Cir. 1993) ("Before we address whether the government's conduct violated a mandatory regulation or policy, we must determine exactly what conduct is at issue.")).  Next, the Court must apply a two-prong test to determine whether the challenged conduct is shielded from liability under the discretionary-function exception.  *See United States v. Gaubert,* 499 U.S. 315, 322–23 (1991).  First, a court must look to whether the conduct at issue involved "an element of judgment or choice."  *Id.* at 322 (quoting *Berkovitz ex rel. Berkovitz v. United States*, 486 U.S. 531, 536 (1988)).  If a "federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow," the inquiry must come to an end, because "the employee has no rightful option but to adhere to the directive."  *Berkovitz*, 486 U.S. at 536.  "In other words, the discretionary function does not apply if the challenged actions in fact violated a federal statute, regulation, or policy."  *Spotts v. United States*, 613 F.3d 559, 567 (5th Cir. 2010).

Conversely, "[i]f a statute, regulation, or policy leaves it to a federal agency to determine when and how to take action, the agency is not bound to act in a particular manner and the exercise of its authority is discretionary."  *Id.*  (citing *Gaubert*, 499 U.S. at 329).  If the discretionary conduct involves governmental actions and decisions based on considerations of social, economic, and political public policy, the discretionary function exception applies.  *Gaubert*, 499 U.S. at 323; *see also Tsolmon v. United States*, 841 F.3d 378, 382 (5th Cir. 2016).  The proper inquiry is "not whether the decision maker in fact engaged in a policy analysis when reaching his decision but instead whether his decision was susceptible to policy analysis."  *In re FEMA Trailer Formaldehyde Prods. Liab. Litig. (La. Plaintiffs)*, 713 F.3d 807, 810 (5th Cir. 2013) (quoting *In re Katrina Canal Breaches Litig.*, 696 F.3d 436, 449 (5th Cir. 2012)).

### 1. Standard of Review

Where, as here, the Court can resolve the discretionary function analysis without addressing the underlying merits of Plaintiff's claim, the Rule 12(b)(1) standard is proper. *Walding v. United States*, 955 F. Supp. 2d 759, 769-70 (W.D. Tex. 2013); *see also Hix v. U.S. Army Corps. of Eng'rs*, 155 F. App'x 121, 128 n.8 (5th Cir. 2005) ("In this case, . . . the merits of the actual cause of action—state-law negligence—are irrelevant to . . . whether the discretionary function exception of § 2680(a) divested the district court of jurisdiction."). A claim is properly dismissed for lack of subject-matter jurisdiction pursuant to Rule 12(b)(1) "when the court lacks the statutory or constitutional power to adjudicate the claim." *In re FEMA Trailer Formaldehyde Prods. Liab. Litig. (Miss. Plaintiffs)*, 668 F.3d 281, 286 (5th Cir. 2012) (quotations omitted); Fed. R. Civ. P. 12(b)(1). "At the pleading stage, the plaintiff has the burden to 'invoke the court's jurisdiction by alleging a claim that is facially outside of the discretionary function exception.'" *Joiner v. United States*, 955 F.3d 399, 404 (5th Cir. 2020) (citation modified) (quoting *Gibson v. United States*, 809 F.3d 807, 811 n.1 (5th Cir. 2016)).

In ruling on a motion under Rule 12(b)(1), however, the Court "has the power to dismiss for lack of subject matter jurisdiction on any one of three separate bases: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Freeman v. United States*, 556 F.3d 326, 334 (5th Cir. 2009) (quoting *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir. 1981)). A Rule 12(b)(1) motion should be granted only "if it appears certain that the plaintiff cannot prove a plausible set of facts that establish subject-matter jurisdiction." *Davis v. United*

*States*, 597 F.3d 646, 649 (5th Cir. 2009) (quoting *Castro v. United States*, 560 F.3d 381, 386 (5th Cir. 2009)).[2]

The Fifth Circuit distinguishes between "facial" and "factual" jurisdictional attacks. *See C.M.*, 672 F. Supp. 3d at 320. "An attack is 'factual' rather than 'facial' if the defendant 'submits affidavits, testimony, or other evidentiary materials.'" *Superior MRI Servs., Inc. v. All. Healthcare Servs., Inc.*, 778 F.3d 502, 504 (5th Cir. 2015) (quoting *Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. 1981). When evaluating a factual attack "no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." *Tucker*, 645 F.2d at 413 (quoting *Mortensen v. First Fed. Sav. and Loan Ass'n*, 549 F.2d 884, 891 (3rd Cir. 1977)). Here, Defendant relies on matters outside the complaint to support dismissal.

### 2. Analysis

In defining the conduct at issue here, Plaintiff's allegations of negligence are based upon a laundry list of acts and/or omissions, including: "[n]ot regularly inspecting or maintaining the Diablo East Boat Ramp cleats," "[n]ot properly training, monitoring, or supervising park personnel," "[v]iolating the requirements of periodic dock checks," and "[c]hoosing not to fix the cleats . . . ." Dkt. No. 8 at 9-10. As Defendant asserts, these claims can be grouped into two categories of conduct: "(1) how NPS personnel maintained the dock cleats at Lake Amistad,

---

[2] Some courts still use the "no set of facts" language, which traces back to the pre-*Iqbal*/*Twombly* Rule 12(b)(6) standard delineated in *Conley v. Gibson*, 355 U.S. 41 (1957). *See, e.g., Robledo v. United* States, 147 F.4th 515, 519 (5th Cir. 2025) (stating that to dismiss under Rule 12(b)(1), it must appear "certain that the plaintiff cannot prove *any* set of facts in support of her claim that would entitle plaintiff to relief" (emphasis added) (quoting *Williams ex rel. J.E. v. Reeves*, 954 F.3d 729, 734 (5th Cir. 2020)). Although there is ultimately little, if any, difference between the two standards, *see Twombly*, 550 U.S. at 562-63, the plausibility standard is a more accurate representation of contemporary language used in addressing Rule 12(b)(1) motions.

including inspecting them and repairing them when necessary; and (2) how NPS trained its personnel to maintain the dock cleats."[3]  Dkt. No. 9 at 8.

### a. Failure to Maintain and Inspect the Dock Cleats

Starting with the first category of conduct, Plaintiff alleges that Defendant violated several mandatory safety standards and regulations that left no freedom to exercise judgment or discretion. Specifically, Plaintiff cites section 8.2.5.1 of the National Park Service Management Policy Manual ("Policy Manual") and the National Park Service Marina Safety Standards (10-Mar) ("Marina Standards") in support of the proposition that Defendant neglected to abide by required safety standards.  *See* Dkt. No. 8 at 8.

### i. Subject to Discretion

Far from prescribing a specific course of action, section 8.2.5.1 of the Policy Manual is laden with conditional and qualifying language merely demonstrating the park service's overall safety goals.  It states, for example, that "the Park Service strives to protect human life and provide for injury-free visits"; "[the Park Service] will seek to provide a safe and healthful environment for visitors"; and "[t]he Service will strive to identify and prevent injuries from recognizable threats to the safety and health of persons . . . ."  Policy Manual § 8.2.5.1, Dkt. No. 6-2 at 11-12. Essentially, section 8.2.5.1 of the Policy Manual promulgates "generalized, precatory, or aspirational language that is too general to prescribe a specific course of action for an agency or employee to follow."  *Freeman v. United States*, 556 F.3d 326, 338 (5th Cir. 2009); *see also Gonzalez,* 851 F.3d at 545-46.

Moreover, section 8.2.5.1 explicitly delegates discretion to the park level personnel in carrying out their duties:

---

[3] Plaintiff subsequently adopted similar categories of conduct in the structure and argument of his response to the Motion.  *See* Dkt. No. 10.

> These management policies do not impose park-specific visitor safety prescriptions. The means by which public safety concerns are to be addressed is left to the discretion of superintendents and other decision-makers at the park level who must work within the limits of funding and staffing.

Policy Manual § 8.2.5.1, Dkt. No. 6-2 at 12. "[I]f a regulation allows the employee discretion, the very existence of the regulation creates a strong presumption that a discretionary act authorized by the regulation involves consideration of the same policies which led to the promulgation of the regulations." *United States v. Gaubert*, 499 U.S. at 324; *see also Cantu Silva v. United States*, 110 F.4th 782, 787-88 (5th Cir. 2024). Given the general language of the Policy Manual and the express grant of discretion contained therein, these regulations do not create the type of specific mandatory direction necessary to circumvent the protection of the discretionary function exception.

Pointing next to the Marina Standards, Plaintiff alleges that park personnel were obligated to perform daily checks on the dock and ensure the dock and its cleats were well-maintained pursuant to the Marina Standards. *See* Dkt. No. 8 at 5. The Marina Standards indeed include clear and unequivocal directives pertaining to the maintenance of marinas. *See generally* Marina Standards, Dkt. No. 6-3. But as Defendant correctly asserts, the Diablo East Boat Ramp is not a Marina within the meaning of the regulations noted in the pleadings.

"Marinas offer services for the boating public including: wet and dry slip storage, dock facilities and courtesy docks, sewage pump-out, and fuel docks[, and] may provide services such as fueling, mechanical boat repair, boat towing and chase services, and boat brokerage." *Id*. at 1. Although Diablo East Boat Ramp offers a boat ramp and courtesy dock, it lacks the full host of services provided at a Marina. Indeed, Defendant, as evidence, offered an affidavit from NPS Chief of the Commercial Services Program, Kurt M. Rausch. *See* Dkt. No. 9-1. Mr. Rausch

9

attested to the fact that "[t]he Marina Standards (Mar-10) do not apply to NPS-managed boat docks and boat ramps that are found in various parks across the service," including Diablo East Boat Ramp. *Id.* at 2. Rather, they apply to privately owned concessioners operating marinas in national parks. *Id*. at 1-2.

However, Plaintiff, in rebuttal, refers to the Policy Manual as evidence of the fact that Defendant must abide by "nationally accepted" standards such as the Marina Standards. Dkt. No. 10 at 9-10 (citing Policy Manual § 8.2.5.1). Plaintiff goes on to assert that "regardless of whether they are directly binding on the Diablo East Boat Ramp," the Marina Standards represent baseline standards for the industry. *Id.*

These arguments fundamentally miss the mark. Even ignoring the fact that the Policy Manual makes no reference to the Marina Standards, the sole focus of the first factor is whether any regulations are directly binding on the Diablo East Boat Ramp. In other words, the question the Court must answer "is not whether the Government acted with due care but whether the Government's conduct was the result of the performance of a discretionary function." *Lively v. United States*, 870 F.2d 296, 298 (5th Cir. 1989). Plaintiff does not present any plausible argument or evidence to show that the Marina Standards are binding authority or nationally accepted standards. Because the record demonstrates that the challenged conduct was discretionary, the first prong of the discretionary function exception is met.

#### ii. Susceptibility to Policy Analysis

Because the first prong is met, the Court must now determine whether the "judgment is of the kind that the discretionary function exception was designed to shield." *Spotts v. United States*, 613 F.3d 559, 567 (5th Cir. 2010) (quoting *Gaubert*, 499 U.S. at 322-23). In support of applying the discretionary function exception, Defendant cites to *Gonzalez v. United States*, 851 F.3d 538

10

(5th Cir. 2017).  Defendant contends that the United States is essentially acting as a landowner of wilderness, and as such, decisions regarding the maintenance of recreational facilities necessarily "implicate resource allocation, wilderness considerations, and public safety . . . ."  Dkt. No. 9 at 13 (quoting *Gonzalez*, 851 F.3d at 548).  To that end, Defendant contends that maintenance decisions concerning the dock are rooted in traditional policy considerations for which sovereign immunity is preserved.

Plaintiff, relying on *Gibson v. United States*, 809 F.3d 807 (5th Cir. 2016), counters that the challenged conduct is more analogous to "routine property maintenance, decisions with which any private landowner would be concerned . . . ."  Dkt. No. 10 at 12 (quoting *Gibson,* 809 F.3d at 813).  In such circumstances, particularly where the government is functioning as a commercial entity, the failure to maintain reasonably safe premises is "not susceptible to the kind of policy analysis shielded by the discretionary function exception."  *Id.* (quoting *Gibson*, 809 F.3d at 813).

The present case falls somewhere on the spectrum between *Gonzalez* and *Gibson*, requiring a closer assessment of the factors undergirding the two decisions.  In *Gonzalez,* the Fifth Circuit affirmed dismissal of the plaintiff's suit for lack of subject matter jurisdiction after she was injured on an unauthorized bike ramp in De Soto National Forest.  *Gonzalez,* 851 F.3d at 541.  There, the plaintiff suffered a serious injury after falling off a bike ramp illegally constructed on one of the park's many bike trails.  *Id.* at 542.  The plaintiff sued under the FTCA alleging, inter alia, that the government was negligent for failing to inspect and maintain the trails.  *Id.* at 544.  The *Gonzalez* decision turned on whether the manner in which the United States Forestry Service inspected and maintained park trails was susceptible to policy considerations.  *Id.* at 547.  The Court identified a line of "wilderness cases" in which the Fifth Circuit held that "when the Government acts as landowner of wilderness, certain kinds of maintenance decisions have been found to contain

11

multiple policy considerations." *Id.* at 548 (quoting *Gibson*, 809 F.3d at 815). Under such circumstances, even seemingly mundane maintenance decisions presumptively implicate considerations such as public safety, environmental interests, and economics. *Id.* (collecting cases).

In affirming dismissal, the court highlighted several factors supporting the presumption that the challenged conduct was susceptible to policy considerations. Namely, the Court found that deciding the appropriate manner for maintaining the bike trails in a 382,000-acre park with limited assets and only two rangers seems to "invite, if not require, 'safety, financial, and other feasibility concerns' . . . [that] implicate resource allocation, wilderness considerations, and public safety . . . ." *Id.* (quoting *Spotts,* 613 F.3d at 573).

The *Gibson* court similarly identified the "wilderness" cases yet nonetheless decided that "[t]he Government's decisions about routine property maintenance, decisions with which any private landowner would be concerned, are not susceptible to the kind of policy analysis shielded by the discretionary function exception." *Gibson,* 809 F.3d at 813. The case arose out of an accident at a Federal Emergency Management Agency (FEMA) mobile home storage site. *Id*. at 809. On the day of the accident, the plaintiff was roaming the storage site and inspecting various mobile homes for sale. *Id.* at 810. FEMA failed to provide stairs up to any of the mobile homes. *Id.* While trying to disembark from one of the mobile homes, the plaintiff lost his balance, fell, and fractured his leg. *Id.* FEMA argued, and the district court agreed, that "[p]racticality and costs are certainly policy considerations touching" on the decisions about how customers would enter and exit the mobile homes. *Id.* at 813. The Fifth Circuit disagreed, however, because "budgetary constraints on their own are often an insufficient policy goal to trigger the exception's protections." *Id.* (citing *O'Toole v. United States*, 295 F.3d 1029, 1035–37 (9th Cir. 2002)). The court went on

to emphasize that "[t]he discretionary function exception is particularly inapt where the Government acts as the operator of a business." *Id.* at 815. Distinguishing the wilderness cases, the court decided that maintaining massive swaths of wild land and operating a showroom floor for mobile homes represented a difference in kind—not degree. *Id.* at 816 ("We find little in common between the judgments of maintaining thousands of miles of waterways and deciding how to allow customers access to trailers being offered for sale."). Ultimately, the Court reversed dismissal, ruling that, where the government was operating as a commercial entity and the only genuine policy consideration was financial, the discretionary function exception did not preserve sovereign immunity.

Factually, this case is closer to *Gibson*. On the one hand, as the government emphasizes in its briefing, Defendant operates the Lake Amistad National Recreation Area as a "landowner of wilderness"—particularly the lake itself. Dkt. No. 9 at 13. But looking past the superficial parallelism of Lake Amistad National Recreational Area to a wilderness, Defendant's maintenance of the Diablo East Boat Ramp bears little, if any, resemblance to the policy considerations at the heart of *Gonzalez* and similar cases. Far from the logistical and environmental complexity of inspecting and maintaining every bike trail in a forest half the size of Rhode Island, ensuring that a boat dock does not critically deteriorate only implicates financial considerations, not practical considerations. Accepting the view that inadequate funding alone garners the protection of the discretionary function "would read the rule too narrowly and the exception too broadly." *In re Katrina Canal Breaches Consol. Litig.*, 627 F. Supp. 2d 656, 696 (E.D. La. 2009) (quoting *Whisnant v. United States*, 400 F.3d 1177, 1184 (9th Cir. 2005).

True, operating Lake Amistad does not serve purely commercial purposes—kayakers, hikers, and swimmers may access the area free of charge. But "[b]oaters need to purchase and

13

carry Amistad Lake Use Passes." Nat'l Park Serv., *Boating*, Amistad Nat'l Recreation Area Tex., https://www.nps.gov/amis/planyourvisit/boating.htm#Boat-Ramp [https://perma.cc/QW9E-YMFR] (last updated August 3, 2025).[4] These fees are part of the federal government's Fee Demonstration Program, where "[eighty percent] of the lake use fees stay here at Amistad NRA to fund recreation-related projects such as improvements to boat ramps, boat docks, and other park facilities." Nat'l Park Serv., *Boating*, Amistad, https://www.nps.gov/amis/planyourvisit/upload/Boating-508-compliant-04232024.pdf [https://perma.cc/J4JT-JE55] (April 1, 2024). In other words, the lake use pass generates income to maintain the very dock cleats at issue. Moreover, the NPS advertises the Diablo East Boat Ramp as one of its main access points to the lake and is one of the few launches with automated fee machines for boaters to purchase use passes. *Id.* Unlike the vast wilderness of Lake Amistad itself, the boat ramp is a manmade structure advertised and used by the NPS to draw in visitors, where maintenance is funded by those very visitors. Now, under the guise of policy concerns, Defendant tries to disavow its most basic duties as a landowner to maintain the dock. That sleight of hand fails.

In general, courts strictly construe waivers of sovereign immunity and resolve any ambiguities in the sovereign's favor. *Joiner v. United States*, 955 F.3d 399, 404 (5th Cir. 2020). Nevertheless, "unduly generous interpretations of the exceptions to the FTCA run the risk of defeating the central purpose of the FTCA, making application of the general rule improper in this context." *Id.* (citation modified). That is precisely the risk Defendant invites this Court to take. Aside from its association with a National Recreation Area, the Diablo East Boat Ramp is no more

---

[4] When reviewing a motion to dismiss, a district court may take judicial notice facts not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed.R.Evid. 201(b); *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007). In this case, the court takes notice of fees imposed by the NPS by resorting to the Park Service's website.

14

of a "wilderness area" than the Walmart parking lot after a heavy rain.  Applying the discretionary function exception here would practically render the NPS immune from any suit which survives the first prong of the analysis, thereby allowing the exception to swallow the rule.[5]  The undersigned therefore concludes that the discretionary function exception does not act as a jurisdictional bar to Plaintiff's negligence claims pertaining to maintenance of the dock.

### b. Inadequate Training and Supervision

The undersigned turns next to the second course of conduct involving the allegations that Defendant was negligent in training, monitoring, and supervising park personnel "to ensure that the cleats were properly secured to the boat ramp."  Dkt. No. 8 at 9.  Arguing in support of the Court's jurisdiction over the matter, Plaintiff claims that "NPS established specific, mandatory protocols for dock maintenance that required personnel to be trained in daily dock checks and cleat maintenance procedures."  Dkt. No. 10 at 16.

However, neither the Marina Standards, the Policy Manual sections cited by Plaintiff, nor his pleadings describe any regulation or procedure specifically tailored towards training and supervision.  "A policy may direct general policy goals—such as determining [compliance with certain guidelines]—but when the policy fails to prescribe 'specific direction' as to what course of action an employee must follow, it generally fails to establish a nondiscretionary duty."  *Lopez v. U.S. Immigr. & Customs Enf't,* 455 F. App'x 427, 433 (5th Cir. 2011) (quoting *Guile v. United States*, 422 F.3d 221, 231 (5th Cir. 2005)).  Absent a clear and binding directive dictating how to train and supervise park personnel, this conduct is exempt from the FTCA pursuant to the

---

[5] Having decided the challenged conduct is outside the scope of the discretionary function exception pursuant to the *Gibson* analysis, the Court need not take up Plaintiff's arguments regarding discretionary and operational conduct. *See* Dkt. No. 10 at 9, 12-13; *Denham v. United States*, 834 F.2d 518 (5th Cir. 1987).

discretionary function exception, and this court lacks jurisdiction to adjudicate the claim.[6] *Cf.*

*Holcombe v. United States*, No. SA-18-CV-555-XR, 2021 WL 67217, at \*22 (W.D. Tex. Jan. 6,

2021) ("[W]hile the discretionary function analysis involves a two-step test, in this case, the first

step—assessing whether the challenged actions were discretionary—will be outcome

determinative.").

In sum, Plaintiff's direct negligence claims do not survive the discretionary function

exception.  As these claims are barred by sovereign immunity, they must be dismissed for lack of

jurisdiction.  Plaintiff's respondeat superior claims, however, may proceed.

### C. Texas Recreational Use Statutes

Pointing next to Texas law, Defendant argues that the Texas Recreational Use Statute, Tex.

Civ. Prac. & Rem. Code §§ 75.002, bars all but Plaintiff's gross negligence claims.  Defendant

further alleges that Plaintiff fails to allege sufficient facts to state a plausible claim of gross

negligence.

Texas enacted the Texas Recreational Use Statute (the "Statute") to limit the liability of

landowners who open their land to the public for the enjoyment of outdoor recreation.[7] *See State*

*v. Shumake*, 199 S.W.3d 279, 284 (Tex. 2006).  It "effectively immunizes the landowner or

occupant from ordinary negligence claims associated with the property's recreational use by

requiring the plaintiff to establish gross negligence" or willful and malicious acts.  *Univ. of Tex. at*

*Arlington v. Williams*, 459 S.W.3d 48, 49 (Tex. 2015).  Essentially, the Statute creates "a legal

---

[6] It is also important to note that nearly all areas of employment decisions, including hiring, supervising, and training employees, are shielded by the discretionary function exception.  *Walding,* 955 F. Supp. 2d at 782.  Simply put, "federal employees' supervision of subordinates involves the kind of judgment that the discretionary-function exception was meant to protect."  *See M.D.C.G. v. United States*, 956 F.3d 762, 772.

[7] Recreation is defined as including activities such as hunting, fishing, swimming, boating, camping, picnicking, hiking, pleasure driving, nature study, cave exploration, waterskiing and other water sports, or any other activity associated with enjoying nature or the outdoors.  Tex. Civ. Prac. & Rem. Code § 75.001(3).

fiction, classifying the invited recreational user of the property as a trespasser, and imposing that limited standard of care upon the landowner." *Shumake*, 199 S.W.3d at 284 (citing Tex. Civ. Prac. & Rem. Code § 75.002(c)(2)).

Plaintiff concedes that the Statute bars his ordinary negligence claims[8] but insists that he sufficiently alleges a claim of gross negligence.[9]  "[G]ross negligence involves two components:

[8] Plaintiff cites to a provision of the Statute that applies to governmental entities, § 75.002(f).  ("Notwithstanding Subsections (b) and (c), if a person enters premises owned, operated, or maintained by a governmental unit and engages in recreation on those premises, the governmental unit does not owe to the person a greater degree of care than is owed to a trespasser on the premises.").  But a "'[g]overnmental unit' has the meaning assigned by [s]ection 101.001." Tex. Civ. Prac. & Rem. Code § 75.001.  A "governmental unit," says section 101.001, is a state government or agency, a political subdivision of the state, an emergency service organization, or "any other institution, agency, or organ of government the status and authority of which are derived from the Constitution of Texas or from laws passed by the legislature under the constitution." Tex. Civ. Prac. & Rem. Code § 101.001(3).  Notably absent from this definition is the federal government and its departments and agencies.  Moreover, the United States is generally liable under the FTCA if a similarly situated *private person* would be liable under state law—not a similarly situated governmental unit or governmental employee. *United States v. Olson*, 546 U.S. 43, 46 (2005) ("The [FTCA] says that it waives sovereign immunity under circumstances where the United States, if a *private person*, not the United States, if a state or municipal entity, would be liable." (citation modified)).  Although there are certain exceptions to this general rule, these exceptions usually involve privilege statutes. *See, e.g., Villafranca v. United States,* 587 F.3d 257 (5th Cir. 2009).  Ultimately, though, the outcome is the same—Plaintiff shall be treated as a trespasser under the Statute.

[9] Although the Statute is designed to promote the availability of recreational activities, it is not intended to grant a windfall to landowners engaged in commercial pursuits.  Therefore, immunity under the Statute only applies to a landowner or occupant who: "(1) does not charge for entry to the premises;  (2) charges for entry to the premises, but whose total charges collected in the previous calendar year for all recreational use of the entire premises of the owner, lessee, or occupant are not more than 20 times the total amount of ad valorem taxes imposed on the premises for the previous calendar year; or (3) has liability insurance coverage in effect on an act or omission described by [s]ection 75.004(a) and in the amounts equal to or greater than those provided by that section." Tex. Civ. Prac. & Rem. Code § 75.003(c).  A "governmental unit," however, falls outside of section 75.003(c)'s caveat, even if an entry fee is charged. *Id.*

    As previously mentioned, NPS requires certain boaters to pay for a Lake Use Pass, raising a question as to whether this fee constitutes a "charge for entry."  If the United States is not a "governmental unit" for purposes of the FTCA, *see* n.8, and the pass qualifies as a "charge for entry," then section 75.002(c)'s limited liability protection would be inapplicable.

    The Statute does not define "charge" and "entry" as used in section 75.003(c), and neither the Supreme Court of Texas nor the Fifth Circuit has yet to define these terms.  However, the First Circuit and Eighth Circuit have strictly construed whether a fee constitutes a charge for entry onto land, noting that "the majority view" under similar state statutes is that "charge" means "an actual admission fee paid for permission to enter the land for recreational purposes." *Hardy v. Loon Mountain Recreation Corp*., 276 F.3d 18, 20 (1st Cir. 2002); *see also Moss v. United States*, 895 F.3d 1091, 1098-99 (8th Cir. 2018) (charge to reserve campsite did not qualify as an "admission fee" under Arkansas's recreational use statute, because other visitors could access the park grounds for free); *Wilson v. United States*, 989 F.2d 953, 957 (8th Cir. 1993) (holding that a $2 fee to stay in a building on a military base did not remove immunity under the Missouri recreational use statute).

    Consistent with these circuits, the undersigned concludes that section 75.003 is not implicated here, where entry into the Amistad Recreation Area and entry onto Lake Amistad itself is free.  Moreover, the fee itself is a nominal amount that is primarily intended to be reinvested into maintenance of the dock and ramp—it is hardly a commercial

17

(1) viewed objectively from the actor's standpoint, the act or omission complained of must involve an extreme degree of risk, considering the probability and magnitude of the potential harm to others; and (2) the actor must have actual, subjective awareness of the risk involved, but nevertheless proceed in conscious indifference to the rights, safety, or welfare of others." *Tex. Dep't of Parks and Wildlife v. Miranda*, 133 S.W.3d 217, 225 (Tex. 2004) (quoting *La.–Pac. Corp. v. Andrade*, 19 S.W.3d 245, 246 (Tex.1999)).   An extreme degree of risk is "not a remote possibility of injury or even a high probability of minor harm, but rather the likelihood of serious injury to the plaintiff." *Boerjan v. Rodriguez*, 436 S.W.3d 307, 311 (Tex. 2014) (quoting *Mobil Oil Corp. v. Ellender*, 968 S.W.2d 917, 921 (Tex. 1998)).   An actual, subjective awareness "means the defendant knew about the peril, but its acts or omissions demonstrated that it did not care." *Id.* (quoting *Ellender*, 968 S.W.2d at 921).

Before assessing whether Plaintiff's gross negligence claim survives, the Court must determine the proper standard of review.   This portion of the motion to dismiss implicates the merits of the gross negligence claim and is therefore analyzed under Rule 12(b)(6)—not Rule 12(b)(1).   To prevail under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).   "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*.   While a complaint need not contain detailed factual allegations, it must set forth "more than labels and

---

windfall.  At the very least, because no party addresses section 75.003 and its application, extensive input from the parties would be necessary before concluding that section 75.003 indeed applies.

conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.

Taken as true, the allegations set forth in Plaintiff's First Amended Complaint plausibly support a claim for gross negligence under Texas law.[10] Plaintiff alleges that the dock cleats were severely deteriorated "with rust, corrosion, and inadequate fastening to the dock"; "[t]he cleats were essential safety components for boat docking"; a dock cleat breaking "can cause severe lacerations, amputations, and other significant injuries"; and "visitors regularly used these cleats to secure their boats." Dkt. No. 8 at 11. If the dock cleats are essential safety components, the failure of which can cause a severe laceration or amputation, then it is plausible that the severe deterioration of the dock cleats presented an extreme degree of risk of a serious injury. This is especially true if Lake Amistad visitors regularly rely on the cleats to secure their boats.

The pleadings also detail facts establishing the subjective prong of gross negligence. In the complaint, Plaintiff alleges, inter alia, "that an NPS employee, Steven Stanz, formally documented in NPS records serious safety concerns with the Diablo East Boat Ramp dock cleats, specifically noting their deteriorated condition and that they presented a safety hazard requiring repair." Dkt. No. 8 at 6. Despite the knowledge that the dock cleats presented a safety hazard, Defendant ignored the reports, failed to adequately inspect the dock, and neither secured the dock cleats nor warned visitors of the dangerous condition. *Id.* at 12. At a minimum, this shows that if Plaintiff's allegations are presumed true, then an NPS employee recognized that the dock cleats

---

[10] Courts have previously held that the FTCA barred recovery for any claims based on theories of gross negligence, because proving the Government's conscious indifference to the rights, safety, and welfare of others was legally indistinct from proving punitive damages. *See Molzof v. United States*, 502 U.S. 301, 312 (1992) (concluding that § 2674 "bars the recovery of what are *legally* considered 'punitive damages' under traditional common-law principles" for FTCA claims). However, a recent Fifth Circuit decision reversed course, holding that it was error to conflate the "heightened legal standard [needed] to prove liability—willful and wanton negligence—with the nature of damages recoverable for breach of that standard*." Robledo v. United States*, 147 F.4th 515, 522 (5th Cir. 2025).

posed a safety threat and Defendant nonetheless failed to act, thus satisfying the subjective element of gross negligence.[11]   Plaintiff, therefore, sufficiently pleads a claim of gross negligence to survive the deferential Rule 12(b)(6) standard of review.[12]

### D. Negligence Per Se

Neither party explicitly addresses Plaintiff's negligence per se claim. [13]   Assuming this claim is not barred by the Texas Recreational Use Statute, Plaintiff nonetheless cannot sustain his claim of negligence per se under Texas law. "Negligence per se is not a separate cause of action that exists independently of a common-law negligence cause of action." *Occidental Petrol. Corp. v. Wells Fargo Bank, N.A.*, 117 F.4th 628, 642 (5th Cir. 2024) (quoting *Thomas v. Uzoka*, 290 S.W.3d 437, 445 (Tex. App. 2009) (citation modified).   "'Rather, negligence *per se* is merely one *method* of proving a breach of duty' that already exists." *Id*. (quoting *Uzoka*, 290 S.W.3d at 445). It is generally recognized when "a duty is imposed based on a standard of conduct created by a penal statute rather than on the reasonably prudent person test used in pure negligence claims." *Smit v. SXSW Holdings, Inc.*, 903 F.3d 522, 529 (5th Cir. 2018) (quoting *Smith v. Merritt*, 940 S.W.2d 602, 607 (Tex. 1997)). "A 'penal statute' is one that defines a criminal offense and specifies

---

[11] Defendant criticizes Plaintiff's use of "upon information and belief" in alleging facts pertaining to knowledge of the dock cleats, but "'information and belief' pleadings are generally deemed permissible under the Federal Rules, especially in cases in which the information is more accessible to the defendant." *Johnson v. Johnson*, 385 F.3d 503, 531 n.19 (5th Cir. 2004) (citing 5 *Wright & Miller's Federal Practice & Procedure* § 1224 (2d ed. 1990)).

[12] Defendant cites to several cases in support of dismissal.  These cases, however, were not decided at the motion to dismiss stage, or were dismissed because of conclusory allegations and a formulaic recitation of the elements.   *See e.g. Universal Servs. Co. v. Ung*, 904 S.W.2d 638 (Tex. 1995) (overturning jury award on appeal after full trial); *U-Haul Int'l, Inc. v. Waldrip*, 380 S.W.3d 118 (Tex. 2012) (affirming award of punitive damages after three week trial); *Medina v. Zuniga*, 593 S.W.3d 238 (Tex. 2019) (holding that no evidence supported the objective element of gross negligence—overturning jury decision); *Williams v. Gen. Binding Corp*., No. 3:23-CV-00850-K, 2024 WL 628850, at *5 (N.D. Tex. Feb. 14, 2024) (dismissing case where the complaint consisted only of a formulaic recitation of the elements and Plaintiff failed to inject any substantive facts into the case); *Jimison v. Smith*, No. 3:24-CV-1867-L, 2024 WL 4557352, at *2 (N.D. Tex. Oct. 23, 2024) (same).

[13] A district court can only dismiss a claim sua sponte after giving the adverse party notice and an opportunity to respond.   *Carver v. Atwood*, 18 F.4th 494, 498 (5th Cir. 2021).   However, a magistrate judge's report and recommendation constitutes sufficient notice and opportunity, as the parties can submit objections to the recommended findings and conclusions.  *Magouirk v. Phillips*, 144 F.3d 348, 359 (5th Cir. 1998).

a corresponding fine, penalty or punishment." *Pack v. Crossroads, Inc.*, 53 S.W.3d 492, 509-10 (Tex. App. 2001) (quoting *Black's Law Dictionary* 1427 (7th Ed. 1999)).

In support of this claim, Plaintiff asserts that failure to abide by the Marina Standards and Policy Manual gives rise to a claim of negligence per se. Dkt. No. 8 at 7-10. But fatally, Plaintiff fails to demonstrate how noncompliance with NPS safety guidelines establishes a breach of duty under Texas law. The cited safety guidelines are nonbinding on NPS and offer no procedure for oversight or punishment for violations. "[F]ederal district courts in Texas generally dismiss negligence per se claims based on the alleged violation of non-penal administrative rules or regulations." *Coyoy v. CoreCivic, Inc.*, Civ. No. SA-19-CA-00916-FB, 2022 WL 18034487, at *9 n.3 (W.D. Tex. Oct. 11, 2022) (collecting cases). Because the safety guidelines are not penal statutes that create a cognizable standard of conduct to displace the reasonably prudent person standard, any failure to adhere to these guidelines would not give rise to a claim for negligence per se.

## IV. CONCLUSION

Based on the foregoing, the undersigned **RECOMMENDS** that Defendant's motion to dismiss be **GRANTED IN PART AND DENIED IN PART**. Plaintiff sufficiently alleges a gross negligence claim, over which the Court has jurisdiction. Plaintiff, however, does not sufficiently allege that his remaining claims can survive under the discretionary function exception and/or Texas law. The undersigned therefore **RECOMMENDS** that Plaintiff's claims of negligent hiring, training, and supervision be **DISMISSED WITHOUT PREJUDICE** and Plaintiff's ordinary negligence and negligence per se claims be **DISMISSED WITH PREJUDICE**.

## V.  NOTICE

The United States District Clerk shall serve a copy of this report and recommendation on all parties either by (1) electronic transmittal to all parties represented by an attorney registered as a filing user with the Clerk of Court pursuant to the Court's Procedural Rules for Electronic Filing in Civil and Criminal Cases; or (2) certified mail, return receipt requested, to any party not represented by an attorney registered as a filing user.  Pursuant to 28 U.S.C. § 636(b)(1), any party who wishes to object to this report and recommendation may do so within fourteen days after being served with a copy.  Failure to file written objections to the findings and recommendations contained in this report shall bar an aggrieved party from receiving a de novo review by the District Court of the findings and recommendations contained herein, *see* 28 U.S.C. § 636(b)(1)(c), and shall bar an aggrieved party from appealing "the unobjected-to proposed factual findings and legal conclusions accepted by the District Court" except on grounds of plain error, *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1429 (5th Cir. 1996).

**SIGNED** this 24th day of February, 2026**.**

_____
JOSEPH A CORDOVA
UNITED STATES MAGISTRATE JUDGE

22