**FILED**

March 31, 2026

CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS

BY: _____ JP
DEPUTY

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**DEL RIO DIVISION**

| | | |
|---|---|---|
| **BRYAN JONES,** *Plaintiff,* <br><br> **v.** <br><br> **UNITED STATES OF AMERICA,** *Defendant.* | § § § § § § § § § § § | Case No.: **DR:24-CV-00114-EG-JAC** |

## MEMORANDUM OPINION AND ORDER

Before the Court is the Report and Recommendation of the Honorable United States Magistrate Judge Joseph A. Cordova (the "R&R"), ECF 12, filed on February 24, 2026. Judge Cordova recommends that the Court grant in part and deny in part the Government's Motion to Dismiss, ECF 9, filed on May 5, 2025.  The Government timely filed an objection to the R&R, to which Plaintiff timely responded. Having reviewed the R&R, the record, and the applicable law, the Court **ADOPTS IN PART** and **REJECTS IN PART** the R&R, and the Government's Motion to Dismiss is **GRANTED**.

### I. BACKGROUND

Plaintiff Bryan Jones's claims arise from an incident that took place at the Diablo East Boat Ramp in the Amistad National Recreation Area (the "Amistad NRA"), where an allegedly negligently maintained metal dock cleat caused severe injuries to Plaintiff's hand. (Pl.'s 1st Amend. Compl. ¶ 10, ECF No. 8). Plaintiff now asserts claims for negligence, negligence per se, and gross negligence under the Federal Tort Claims Act's ("FTCA") waiver of immunity. (Pl. 1st Amend. Compl. at 6–7, 10). The Government moved to dismiss Plaintiff's First Amended Complaint, arguing that both the discretionary-function exception to the FTCA and the Texas Recreational Use Statute deprive the Court of subject matter jurisdiction over Plaintiff's claims. (Gov't Mot. Dism. 2, ECF No. 9).

1

On February 24, 2026, Judge Cordova issued the R&R, recommending that the Court deny the Government's motion with regard to Plaintiff's claims arising from the National Park Service's ("NPS") maintenance of the dock cleats, but grant the Government's motion to the extent Plaintiff asserted claims against the Government for negligent training and supervision of NPS employees. (R&R 21, ECF No. 12). The Government timely objected in part to the R&R, and Plaintiff timely responded to the Government's objections. (Gov't Obj., ECF No. 13; Def. Resp., ECF No. 14).

## II. LEGAL STANDARD

Unobjected-to findings of a magistrate judge are reviewed to determine whether the findings are "clearly erroneous or contrary to law." 28 U.S.C. § 636(b)(1)(A), (C); *United States v. Wilson*, 864 F.2d 1219, 1221 (5th Cir. 1989). The district court conducts a de novo review of findings to which parties do timely object. 28 U.S.C. § 636(b)(1)(C).

Claims brought against the United States under the FTCA that can be resolved on a jurisdictional basis without reaching the merits are subject to dismissal for lack of subject matter jurisdiction. FED. R. CIV. P. 12(b)(1); *Hix v. U.S. Army Corps. of Eng'rs*, 155 F. App'x 121, 128 n.8 (5th Cir. 2005). The Plaintiff has the burden of invoking the Court's jurisdiction on the face of the complaint. *Joiner v. United States*, 955 F.3d 399, 404 (5th Cir. 2020).

## III. ANALYSIS

The United States enjoys sovereign immunity from suit unless Congress explicitly consents to waive immunity.[1] *United States v. Navajo Nation*, 537 U.S. 488, 502 (2003). The FTCA provides such a waiver in suits "relating to tort claims, in the same manner and to the same extent as a private individual . . . ." 28 U.S.C. § 2674. Congress has established thirteen statutory exceptions to the FTCA, including what has been dubbed the "discretionary-function exception":

---

[1] The application of sovereign immunity is a jurisdictional matter; if Congress has not consented to the claim, the Court lacks jurisdiction. *United States v. Navajo Nation*, 537 U.S. 488, 502 (2003).

> The provisions of [the FTCA] shall not apply to . . . any claim based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid, or based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused.

28 U.S.C. § 2680(a); *United States v. Gaubert*, 499 U.S. 315, 322 (1991).

Two conditions must be met for the discretionary-function exception to apply: (1) the challenged conduct must be "discretionary in nature"; and (2) the conduct must be "of the kind that the discretionary-function exception was designed to shield." *Cantu Silva v. United States*, 110 F.4th 782, 787 (5th Cir. 2024). When evaluating claims in light of the discretionary-function exception, courts look beyond the subjective intent of a single government actor, considering instead the discretionary nature of the conduct and whether it involved "an element of judgment or choice." *Joiner*, 955 F.3d at 405.

In this case, the challenged conduct is of two types: NPS decisions about maintenance of dock cleats in the Amistad NRA; and NPS's training and supervision of Amistad NRA personnel. (R&R at 7–8); *see Gonzalez v. United States*, 851 F.3d 538, 545 (5th Cir. 2017) (assessing the applicability of the discretionary-function exception by first identifying the challenged conduct). The Court agrees that the dock-cleat maintenance decisions are "discretionary in nature," but finds that the conduct is akin to maintenance of a wilderness area such that the discretionary-function exception will preserve the Government's sovereign immunity. The Court further finds that NPS's training and supervision decisions are subject to the discretionary-function exception. Accordingly, the Government has not waived sovereign immunity under the FTCA for any of Plaintiff's claims, and, thus, the Court lacks subject-matter jurisdiction.

3

**A. NPS's Dock-Cleat Maintenance Decisions**

The Court adopts the R&R's finding that the first prong of the discretionary-function exception is satisfied with regard to NPS's dock-cleat maintenance decisions. The Court declines to adopt, however, the R&R regarding the second prong of the discretionary-function exception and finds that the challenged conduct falls within the exception's scope.

### 1. Decisions regarding maintenance of dock cleats are discretionary.

The Parties do not object to the R&R to the extent it finds that decisions about dock-cleat maintenance are discretionary. The Court finds that conclusion to be neither erroneous nor contrary to law. *See* 28 U.S.C. § 636(b)(1)(A), (C). The Policy Manual clearly delegates discretion to "decision-makers at the park level" to manage the safety of park visitors, and no mandatory regulation or law specifically directs the manner in which NPS personnel maintain the Amistad NRA's dock cleats. *See Gaubert*, 499 U.S. at 324 (holding the government is not immune from liability for violations of mandatory regulations where "there is no room for choice . . . ."). The Court therefore adopts the R&R's findings with regard to the first step of the discretionary-function exception analysis.

### 2. Decisions regarding maintenance of the Amistad NRA dock cleats are those that the discretionary-function exception is designed to shield.

The Government objects to the R&R's conclusion that the maintenance decisions at issue are not the type of governmental decisions the discretionary-function exception is designed to protect from liability. (Gov't Obj. at 4). Upon conducting a de novo review of those findings, the Court declines to adopt the R&R and finds that the discretionary-function exception applies. *See* 28 U.S.C. § 636(b)(1)(C).

In evaluating whether challenged conduct satisfies the discretionary-function exception's second requirement, courts "consider whether the actions taken are susceptible to policy analysis."

4

*Gonzalez*, 851 F.3d at 544. The policy analysis in which individual government actors may have engaged is irrelevant, as is whether the government was actually negligent. *Spotts v. United States*, 613 F.3d 559, 572 (5th Cir. 2010). "The exception only shields those acts that are based on the purposes that the regulatory regime seeks to accomplish." *Gibson v. United States*, 809 F.3d 807, 813 (5th Cir. 2016).

The Fifth Circuit distinguishes cases in which the Government acts as the operator of a commercial business on one hand and as the operator of a wilderness area on the other. For example, in *Gibson*, the Fifth Circuit held that the Government's conduct as an operator of a business was not subject to the discretionary-function exception. 809 F.3d at 816. In that case, a Federal Emergency Management Agency ("FEMA") policy related to the sale of used trailers dictated that FEMA staff should not assist customers in entering or exiting the trailers. *Id.* While exiting a trailer, one prospective customer fell from a step ladder and subsequently sued FEMA for tort liability under the FTCA. *Id.* at 810. Critical to the court's analysis was that the practice of selling used trailers at auction was far removed from FEMA's mission; rather than serving policies supporting FEMA's role as an emergency response agency, FEMA made a business decision when it determined the manner in which customers should access trailers for sale. *Id.* at 815–16. Such decisions were akin to "routine property maintenance" with which "any private landowner would be concerned." *Id.* at 813.

"Rather differently, when the Government acts as a landowner of wilderness, certain kinds of maintenance decisions have been found to contain multiple policy considerations." *Id.* at 815. An instructive example is *Gonzalez*, in which the Fifth Circuit held that the Government's maintenance of biking trails in the De Soto National Forest was susceptible to policy analysis. 851 F.3d at 548. Distinguishing business operations from operations of a "wilderness area," the court

5

reasoned that, considering the expanse of the National Forest and the limited resources afforded to staff, "decisions about how to maintain bicycle trails . . . seem to invite, if not require, safety, financial, and other feasibility concerns." *Id.* And such decisions directly served the stated policy goals of "long-term cost effectiveness," "developing or rehabilitating trails," and "provid[ing] a trail system that is environmentally, socially, and financially sustainable." *Id.*

The salient takeaway from *Gibson*, *Gonzalez*, and other so-called "wilderness cases" is this: the maintenance of wilderness areas serves a different function than maintenance in the commercial context. Upkeep of a wilderness area directly implicates the core policies of wilderness management, such as safety, conservation, economics, and accessibility; maintenance decisions that serve a business purpose do not require the government to weigh policy considerations to the same extent. *See Theriot v. United States*, 245 F.3d 388, 399–400 (5th Cir. 1998) (concerning management of public waterways); *Hix*, 155 F. App'x at 127 (same).

The circumstances here are more neatly characterized as a "wilderness case" in which maintenance decisions contain multiple policy considerations. Like the National Forest in *Gonzalez*, the Amistad NRA is massive: it spans over 57,000 square miles, with 12 individual boat ramps serving 547 miles of Lake Amistad's shoreline. Nat'l Park Serv., *Boating*, Amistad Nat'l Recreation Area, https://home.nps.gov/amis/planyourvisit/boating.htm (last visited Mar. 30, 2026); Nat'l Park Serv., *Frequently Asked Questions*, Amistad Nat'l Recreation Area, https://www.nps.gov/amis/faqs.htm (last visited Mar. 30, 2026). Achieving NPS's stated policy goals across that expansive property, such as "seek[ing] to provide a safe and healthful environment for visitors," requires the careful allocation of resources to each boat dock based on safety, feasibility, and accessibility concerns. (R&R at 8). Those are "quintessentially discretionary judgement[s]" that, like in *Gonzalez*, necessarily "implicate resource allocation, wilderness

considerations, and public safety . . . .” *Gonzalez*, 851 F.3d at 548; *Gibson*, 809 F.3d at 816. Accordingly, dock-cleat maintenance decisions in the Amistad NRA are susceptible to policy analysis, and, thus, are of the type that the discretionary-function exception is designed to protect.

Although both this case and *Gibson* involve some degree of fundraising, the cases are materially distinguishable. The first key distinction is that the operations in *Gibson* served a purely commercial purpose, that is, making the disposal of the agency's assets more economical by "requiring customers to find their own way into the trailers." *Gibson*, 809 F.3d at 816. In contrast, collecting and using visitor fees to maintain boat docks has everything to do with NPS's policy interest in providing safe and sustainable access to Lake Amistad; the mere fact that fees are collected from and reinvested into the Amistad NRA's boat ramps does not alone render boating on Lake Amistad a commercial enterprise.

The second key distinction is that maintaining a dozen boat ramps across hundreds of miles of shoreline requires a far more involved decision-making matrix than, as was the case in *Gibson*, "deciding how to allow customers access to trailers being offered for sale." *Id.* The added complexity necessitates a robust balancing of policy goals against practical and financial limitations, while the decision of how customers should enter or exit trailers for sale requires little contemplation of policy consequences.

In sum, maintenance of boat ramps at the Amistad NRA, including dock cleats, requires NPS to make policy-driven decisions about resource allocation throughout the Amistad NRA wilderness area. Such decisions are susceptible to policy analysis and, thus, are the type of decisions that the discretionary-function exception was designed to shield. The Court therefore finds that the discretionary-function exception applies to the challenged conduct.

**B. NPS's Inadequate Training and Supervision**

The Parties have not objected to the R&R's findings with regard to whether NPS's conduct in allegedly failing to train and supervise Amistad NRA personnel is subject to the discretionary-function exception. The Court finds that the R&R is neither clearly erroneous nor contrary to law: courts have routinely held that the manner in which government agencies train and supervise employees is generally discretionary within the scope of the discretionary-function exception. *See* 28 U.S.C. § 636(b)(1)(A), (C); *M.D.C.G. v. United States*, 956 F.3d 762, 772 (5th Cir. 2020) (holding that "federal employees' supervision of subordinates involves the kind of judgment that the discretionary-function exception was meant to protect."). Thus, the Court adopts the R&R and finds that Plaintiff's claims are jurisdictionally barred to the extent that they allege negligent training or supervision.

**C. Dismissal for Lack of Subject Matter Jurisdiction**

Because the entirety of the challenged conduct falls within the discretionary-function exception to the FTCA, the Government retains its sovereign immunity against Plaintiff's claims, and the Court lacks subject-matter jurisdiction. *Gaubert*, 499 U.S. at 322 (when the discretionary function exception applies, the waiver of sovereign immunity is withdrawn); *Spotts*, 613 F.3d at 566 (same). Accordingly, the Court must dismiss Plaintiff's negligence, negligence per se, and gross negligence claims. *See Carver v. Atwood*, 18 F.4th 494, 497 (5th Cir. 2021) (stating that "dismissal is mandatory when a court discovers that it lacks subject-matter jurisdiction.").

**IV. CONCLUSION**

**IT IS THEREFORE ORDERED** that the Report and Recommendation of the Honorable United States Magistrate Judge Joseph A. Cordova, ECF 12, is **ADOPTED IN PART** and **REJECTED IN PART**.

8

**IT IS FURTHER ORDERED** that the Government's Motion to Dismiss, ECF 9, is **GRANTED**.

**IT IS FURTHER ORDERED** that the First Amended Complaint, ECF 8, is **DISMISSED WITHOUT PREJUDICE** in its entirety.

**SIGNED**, this 31st day of March 2026.

_____
ERNEST GONZALEZ
UNITED STATES DISTRICT JUDGE